# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRIAN N. SIMPSON, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 11-2648-JWL |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the weighing of the opinion evidence, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.     Background

Plaintiff applied for SSD on August 8, 2009, alleging disability beginning October 15, 2008. (R. 12, 121-28). The application was denied and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 12, 78, 95). Plaintiff's request was

granted, and Plaintiff appeared with counsel for a video hearing before ALJ Deborah J. Van Vleck on October 20, 2010.  (R. 12, 25)  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 12, 25-64).  On December 3, 2010 ALJ Van Vleck issued her decision finding that Plaintiff is not disabled within the meaning of the Act, and denying Plaintiff's application.  (R. 12-20).  Plaintiff sought Appeals Council review of the ALJ's decision, and submitted a Representative Brief.  (R. 8, 244-45).  The Appeals Council made the Representative Brief a part of the administrative record and considered it in evaluating Plaintiff's request for review.  (R. 1, 5).  Nonetheless, the Council found that the brief did not provide a basis to change the ALJ's decision, found no reason under Social Security Administration rules to review the decision, and denied Plaintiff's request.  (R. 1-2).  Therefore, the ALJ's decision became the final decision of the Commissioner.  (R. 1); _Blea v. Barnhart_, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff timely filed this case, seeking judicial review of the Commissioner's decision.  (Doc. 1).

**II.     Legal Standard**

The court's jurisdiction and review are guided by the Act.  _Weinberger v. Salfi_, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); _Wall v. Astrue_, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); _Brandtner v. Dep't of Health and Human Servs._, 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)); _see also_, 42 U.S.C. § 1383(c)(3) (SSI decision "shall be subject to judicial review as provided in section 405(g)").  Section 405(g) provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It

also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 404.1520 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, Plaintiff makes numerous claims of error.  First, he argues that the ALJ failed to consider the opinions of Plaintiff's wife; of Dr. Stacy, a state agency nonexamining physician; and of Dr. Pratt, a nontreating physician who performed an independent medical evaluation of Plaintiff's lower back.  (Pl. Br. 13-18).  He next argues that the ALJ improperly evaluated the severity of his anxiety-related disorder at step two and step three of the evaluation process.[1]  (Pl. Br. 18-21); (Reply 7-8).  He also argues that the ALJ failed to consider obesity in accordance with the requirements of Social Security Ruling (SSR) 02-1p, that the ALJ erred in weighing the opinion evidence, and that the ALJ's credibility determination and RFC assessment are not supported by substantial record evidence.  (Pl. Br. 21-34).

The Commissioner responds that the ALJ did not err.  He argues that the ALJ properly determined the credibility of Plaintiff's allegations and properly weighed

---

[1]In his Brief, Plaintiff asserts error in the ALJ's Step three determination regarding his mental impairments, but in his Reply Brief, he clarifies that he is not asserting that his condition meets or equals Listing 12.06.  He argues that the erroneous evaluation of his anxiety-related disorder resulted in an erroneous RFC which does not include appropriate mental limitations.  (Reply 7-8).  This constitutes an argument that the ALJ erred in evaluating the severity of Plaintiff's anxiety-related disorder.

5

Plaintiff's wife's statement, that he properly determined Plaintiff's impairments do not meet or equal the severity of a Listed Impairment, and that he properly weighed the opinion evidence and assessed Plaintiff's RFC. (Comm'r Br. 16-40). The court finds that remand is necessary because the ALJ did not properly evaluate the opinion evidence. Therefore, the court need not consider the remaining allegations of error, and Plaintiff may make his arguments in that regard to the Commissioner on remand.

## III.   Evaluation of the Opinion Evidence

With regard to the opinion evidence, Plaintiff argues that the ALJ did not consider or discuss the "other source" opinion of Plaintiff' spouse (R. 222-29), or the medical opinions of Dr. Stacy or Dr. Pratt. (Pl. Br. 13-18). He argues that the ALJ erred in weighing the "other source" opinion of Ms. Titterington, a vocational rehabilitation counselor; the medical opinions of Dr. Zipper, Dr. Rope, and Dr. Ciccarelli; and the treating source medical opinion of Dr. Boulware. (Pl. Br. 22-29). The Commissioner argues that the ALJ was not required to mention the opinion of Plaintiff's wife because her opinion is largely cumulative of Plaintiff's testimony and the ALJ stated that she had considered all of the evidence (presumably including Plaintiff's wife's statement). (Comm'r Br. 20-21) (citing the unpublished opinion of Davis v. Astrue, 237 F. App'x 339, 342 (10th Cir. 2007)). The Commissioner argues that the ALJ properly weighed the medical opinions and the "other source" opinion of the vocational rehabilitation counselor, and he explains how in his view the record evidence supports the decision. Id. at 24-36. He argues that even though the ALJ did not mention Dr. Pratt's opinion, this

6

error was harmless because the RFC assessed was significantly more restrictive with respect to lifting than Dr. Pratt's limitations.  Id. at 30-31.  Finally, he argues that although the ALJ did not name Dr. Stacy or summarize his opinion, he did recognize that the State agency physicians had assessed Plaintiff's impairments and limitations and the failure to specifically discuss Dr. Stacy's opinion is not fatal.  Id. at 31-32 (citing R. 14).  He argues that it is the ALJ's duty to resolve conflicts in the evidence and that substantial record evidence supports the ALJ's finding that Plaintiff has mild limitations in social functioning rather than the moderate limitations opined by Dr. Stacy.  (R. 31-33).

### A. The "Other Source" Opinion of Plaintiff's Spouse

As Plaintiff asserts and the Commissioner acknowledges, the ALJ did not even mention the opinion of Plaintiff's wife in his decision.  In the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each witness's credibility when the written decision reflects that the ALJ considered the testimony.  Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996).  In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony."  93 F.3d at 715.  The Adams court determined "that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding the testimony.  Id.  Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific

written findings of credibility regarding third-party testimony if the written decision reflects that the ALJ considered it.  Blea, 466 F.3d at 915.

The relevant facts in Blea are substantially identical to those presented here, and the Commissioner does not attempt to distinguish them.  In fact, the Commissioner did not even address Blea or Adams in his response brief.  In Blea, the plaintiff argued that remand was necessary because the ALJ failed to discuss or consider the lay testimony of the plaintiff's wife.  Blea, 466 F.3d at 914.  The Commissioner's decision in Blea did not mention any particulars of Mrs. Blea's testimony, and never even mentioned that she had testified regarding the nature and severity of her husband's impairments.  Id. at 914.  The Commissioner asserted that there was no reversible error because the ALJ is not required to make written findings about each witness's credibility.  Id.  The court noted that the Commissioner had stated only part of the rule in this circuit and corrected the Commissioner, "[i]n actuality, the ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'" Id. at 915 (quoting Adams, 93 F.3d at 715).  The Blea court noted that the ALJ had not mentioned Mrs. Blea's testimony or referred to the substance of her testimony anywhere in the written decision, and concluded that "it is not at all clear that the ALJ considered Mrs. Blea's testimony in making his decision."  Id. (internal quotation marks, brackets, and citation omitted).  Therefore, the case was remanded to consider Mrs. Blea's testimony properly.  Id.

The Davis case cited by the Commissioner does not compel a different result here. In Davis, as quoted by the Commissioner the court noted that "the ALJ's decision states and demonstrates that he considered all of the evidence." Davis, 237 F. App'x at 342 (emphasis added) (citing Adams, 93 F.3d at 715). By recognizing that the decision demonstrates the ALJ considered all of the evidence, the Davis court acknowledge the rule in the Tenth Circuit that an ALJ will not be required to make specific written findings of credibility regarding third party testimony, but only if the written decision reflects that the ALJ considered the testimony. In Adams and Davis the written decision demonstrated that the ALJ considered the third party opinion and remand was not necessary. In Blea as in this case, the decision did not mention the third party opinion and did not demonstrate that the opinion had been considered. Therefore remand is necessary to consider the opinion properly.

    **B.**    **Evaluating the Medical Opinion Evidence**

        1.    Standard

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012). A physician

who has treated a patient frequently over an extended period of time (a treating source)[2] is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the

---

[2]The regulations define three types of "acceptable medical sources:"
 "Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
 "Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
 "Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v.

Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### 2. Analysis

As discussed above, in evaluating opinion evidence the first question is whether there is a treating source opinion which is worthy of "controlling weight." Here, the ALJ acknowledges that Dr. Boulware is Plaintiff's "family doctor," but the decision contains no discussion of whether his opinions might be accorded "controlling weight." (R. 18). Nonetheless, because the ALJ: found that Dr. Boulware's RFC assessment "is not consistent with the totality of the medical evidence," id., weighed the other medical opinions, id. at 17-18, and assigned "the most weight to the opinion of Dr. Zipper and Dr. Breckenridge," id. at 17, one might properly conclude that she determined Dr. Boulware's opinions were unworthy of such controlling weight.

Nevertheless, it is by no means clear what weight she accorded to those opinions. She apparently discounted Dr. Boulware's opinions because his treatment records showed normal functioning, because his opinions that Plaintiff has marked limitations in several areas of mental functioning are not supported by treatment records, because the evidence

12

does not show consistent follow-up mental health treatment, because the opinions are internally inconsistent, and because they are not consistent with the totality of the medical evidence. Id. at 18. However, she did not state whether she had given the opinions no weight, little weight, or some other modicum of weight, and did not explain how his opinions affected her RFC assessment. This is error requiring remand for a proper explanation of the weight accorded the treating source opinion of Dr. Boulware.

As Plaintiff argues and as the Commissioner acknowledges, the ALJ did not so much as summarize or even mention the nonexamining source opinion of Dr. Stacy, the state agency psychologist who reviewed the record and determined that Plaintiff's anxiety-related disorder is severe and causes moderate limitations in eight out of twenty mental activities related to work, or the nontreating source opinion of Dr. Pratt, who performed and reported on an independent medical evaluation of Plaintiff's low back pain. (R. 334-38, 352-65). Because these opinions were not mentioned by the ALJ, it appears they were ignored contrary to Social Security Regulations and Rulings. Moreover, as to Dr. Stacy's opinion, the regulations specifically require that all opinions from nonexamining sources such as state agency psychologists must be evaluated using the regulatory factors previously enumerated and the ALJ must explain in the decision the weight given those opinions. 20 C.F.R. § 404.1527(f)(2)(ii & iii). The ALJ did not do so, and that is error.

Nonetheless, the Commissioner argues that any error in failing to discuss and assign weight to the opinions of Dr. Stacy and Dr. Pratt was harmless. The court cannot

agree. The Tenth Circuit has cautioned that harmless error analysis should be used sparingly in judicial review of agency actions because the court might thereby engage in fact-finding reserved to the agency and because it might be drawn into post-hoc rationalization of the agency's decision. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (citing Drapeau, 255 F.3d at 1212; and SEC v. Chenery Corp., 318 U.S. 80 (1943)). The Allen court explained that "[w]ith these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Id. 357 F.3d at 1145.

In this case, however it is not even certain that the ALJ considered these opinions. That uncertainty is sufficient to give the court pause, especially in light of the fact that the court cannot confidently say that no reasonable fact-finder following the correct analysis could have resolved the factual matter differently. For example, Dr. Pratt opined that Plaintiff should "not perform any frequent low back bending or twisting." (R. 334). That limitation was not discounted by the ALJ, but it was not presented in any way to the vocational expert. Therefore, the court is unable to find substantial record evidence to establish that Plaintiff can perform the representative jobs presented despite that limitation. Moreover, Dr. Stacy found that Plaintiff has moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration,

persistence, or pace, and has had one or two episodes of decompensation of extended duration, and concluded that Plaintiff has moderate limitations in eight out of twenty mental activities related to work. (R. 360, 363-64). Although the ALJ determined Plaintiff has only mild difficulties in social functioning, she did not explain why she rejected Dr. Stacy's finding of moderate difficulties, and the court cannot say that no reasonable fact-finder could have resolved the matter differently. Further, the sheer weight of eight moderate limitations in work-related mental activities, if accepted, might be sufficient to reach a different decision in this case.

Over-arching each of these considerations in this case is the fact that the ALJ did not engage in any relative weighing of the opinion evidence and did not adequately explain the relative weight accorded to each opinion. On the present state of the record, the court is unable to ascertain with any certainty the weight accorded the opinion evidence, and is unable to determine whether the ALJ's evaluation of the opinion evidence is supported by substantial evidence. For example, the ALJ stated, "I give the most weight to the opinion of Dr. Zipper and Dr. Breckenridge, <u>as they are consistent with multiple opinions from other orthopedic treating and examining physicians</u>, reflecting a residual functional capacity in the sedentary range." (R. 17) (emphasis added).

The court is simply unable to determine the evidentiary basis for the underlined portion of this finding. Dr. Breckenridge is a psychologist, not an orthopedic physician, and the ALJ acknowledged as much. (R. 17, 313-18). Dr. Breckenridge examined

15

Plaintiff and his opinion is similar to Dr. Stacy's opinion, but he does not suggest as many mental limitations as does Dr. Stacy, and he found only mild to moderate limitations in social functioning. (R. 317). The ALJ did not resolve the differences, and did not even mention Dr. Stacy's opinions. Dr. Ciccarelli is the orthopedic surgeon who treated Plaintiff for his back injury, and performed the surgery on Plaintiff's back, yet the ALJ found that his medical opinion "is simply not current." (R. 17). Dr. Boulware treated Plaintiff as his family doctor. It does not appear what Dr. Boulware's specialty is, but likely, as a family doctor, he is not an orthopedic physician. In any case, as discussed above the ALJ gave five reasons to discount Dr. Boulware's opinions and did not assign weight to his opinions. Dr. Rope examined Plaintiff. He is not an orthopedic physician, but he is certified in internal medicine and is a Fellow of the American Academy of Disability Evaluating Physicians. (R. 442). The ALJ only gave "partial weight" to Dr. Rope's opinion because it is "very dated." (R. 18). Dr. Pratt is an orthopedic physician who examined Plaintiff (R. 334-38), but the ALJ did not even mention him, did not evaluate his opinion, and did not assign weight to the opinion. Although the ALJ stated that Dr. Zipper's and Dr. Breckenridge's opinions are "<u>consistent with multiple opinions from other orthopedic treating and examining physicians</u>," she discounted every other opinion she mentioned, she did not explain how the opinions were consistent and/or inconsistent, and she did not discuss or weigh other opinions which were clearly relevant to the issues presented in this case. This case must be remanded for a proper evaluation of the opinion evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings.

Dated this 22nd day of October 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**